**In re KZK LIVESTOCK, INC., an Illinois Corporation, Debtor.**

**Richard E. BARBER, not individually, but as trustee for the estate of KZK Livestock, Inc., Plaintiff,**

**v.**

**COLCHESTER STATE BANK, Defendant.**

Bankruptcy No. 91–82986.
Adversary No. 95-8015.

United States Bankruptcy Court,
C.D. Illinois.

May 21, 1998.

See also 221 B.R. 471, 221 B.R. 483.

Alan J. Fulkerson, Riordan & Larson, Chicago, IL, for plaintiff.

John Bisbee, Macomb, IL, for defendant.

### OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

Kendall Knowles (KNOWLES) maintained a checking account at the Colchester State Bank (COLCHESTER). KNOWLES was also the sole shareholder, director and officer of KZK Livestock, Inc., an Illinois Corporation (KZK). KZK maintained a checking account at the First National Bank of Blandinsville (FIRST). KNOWLES, individually and as the controlling officer of KZK, operated a check kite between COLCHESTER and FIRST. The statement for the COLCHESTER account-reflects the following. On August 14, 1991, COLCHESTER paid two checks totaling $147,000 payable to KZK, which resulted in the account at COLCHESTER going into a negative position in the amount of $81,380.26. On August 15, 1991, KZK wrote a check payable to KNOWLES, that was deposited into the account at COLCHESTER on that same date, which, after honoring another check and adding charges, brought the negative position to $91,294.26. On August 16, 1991, KZK wrote a second check to KNOWLES in the amount of $100,-000, that was also deposited into the account at COLCHESTER three days later, on August 19, 1991, which brought the account balance to a positive position of $8,623.74.

An involuntary petition in bankruptcy was filed against KZK, which was consented to by KZK. KZK's Trustee in bankruptcy (TRUSTEE) brought an eight count adver-

sary proceeding against COLCHESTER.[1] Those counts can be summarized as follows:

Count I is brought under § 548(a)(1) of the Bankruptcy Code, 11 U.S.C. § 548(a)(1) to recover as a fraudulent conveyance $130,000 transferred from FIRST to COLCHESTER as part of the check kite and which COLCHESTER knew was not backed by good funds, but was obtained by KNOWLES through the check kite.

Count II, realleging the facts of Count I, is brought under § 5(a) of the Uniform Fraudulent Transfer Act, as adopted by the State of Illinois, 740 ILCS 160/5(a), to recover $130,000.[2]

Count III is brought under § 548(a)(1) and § 550(a)(1) of the Bankruptcy Code, 11 U.S.C. § 550(a)(1), to recover from COLCHESTER, as an initial transferee of a fraudulent conveyance, $300,000 deposited into the checking account at COLCHESTER to satisfy indebtedness owed to COLCHESTER by KNOWLES arising out of COLCHESTER paying checks drawn on the checking account at COLCHESTER pursuant to check kite.

Count IV, realleging the allegations of Counts I and III, is brought under § 548(a)(2) and § 550(a)(1) to recover $300,000 from COLCHESTER as an initial transferee.

Count V, realleging the allegations of Counts I and III, is brought under § 548(a)(1) and § 550(a)(2) to recover $300,000 from COLCHESTER as an immediate transferee.

Count VI, realleging the allegations of Counts I and III, is brought under § 548(a)(2) and § 550(a)(2) to recover $300,000 from COLCHESTER as an immediate transferee.

Count VII and VIII, realleging the allegations of Counts I and III, are brought under § 5(a) and 5(b) respectively and § 9 of the Uniform Fraudulent Conveyance Act as adopted in Illinois, 740 ILCS §§ 160/5(a), 160/5(b) and 160/9, to recover $300,000 from COLCHESTER.[3]

After filing an answer denying the allegations and raising affirmative defenses, COLCHESTER filed a motion for summary judgment as to all counts, and the TRUSTEE filed a motion for summary judgment as to Counts III and V. A hearing was held and the motions taken under advisement.

Before addressing the issues raised by the motions, it is helpful to place the various counts in context with the Bankruptcy Code sections upon which they are premised. Sections 548(a) and 550(a) and (b) provide as follows:

§ 548. Fraudulent transfers and obligations.

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to

---

**1.** A check kiting scheme operated by KNOWLES using a KZK bank account preceded KZK's bankruptcy and the filing of three adversary proceedings under § 548 of the Bankruptcy Code against three different types of defendants, all of which were presented for decision by motions for summary judgment that were taken under advisement. This adversary involves the TRUSTEE's action to recover funds paid from KZK's account to COLCHESTER to cover the check kite and an overdraft situation involving KNOWLES' checking account at COLCHESTER. Adversary # 95–8069 involves a lender/borrower relationship where the TRUSTEE is attempting to recover loan repayments from the creditor. Adversary # 95–8142 involves the TRUSTEE's action to recover funds paid from KZK's account to another bank that had improperly transferred

funds from an account belonging to a related corporation. Being concerned that there could be common legal principles that would impact all three cases, this Court elected to consider the issues of all three cases at the same time. Therefore, all three Opinions are being issued concurrently.

**2.** The TRUSTEE subsequently agreed to voluntarily dismiss Counts I and II.

**3.** The pleading of § 5(b) to create an independent cause of action seems to be an inappropriate reference to the Uniform Fraudulent Transfer Act. As COLCHESTER has not challenged the count, this Court is proceeding by ruling on COLCHESTER's motion for summary judgment.

which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

§ 550. Liability of transferee of avoided transfer.

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under subsection (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

Section 548(a) sets forth two independent grounds for the avoidance of a fraudulent conveyance. Under § 548(a)(1), it is a fraudulent conveyance to make a transfer with intent to defraud creditors. Under § 548(a)(2), it is a fraudulent conveyance to make a transfer for less than reasonably equivalent value. Under § 550(a)(1), a recovery under either § 548(a)(1) or (2) can be against an initial transferee or an entity for whose benefit the transfer was made, while under § 550(a)(2) such a recovery can be against an immediate or mediate transferee. Counts III through VI of the TRUSTEE's complaint are intended to cover the various possibilities under the combined application of § 548(a) and § 550(a). However, the TRUSTEE's motion is only as to Count III, under § 548(a)(1) and § 550(a)(1) seeking to recover from COLCHESTER, as an initial transferee, a transfer made with the intent to defraud creditors, and as to Count V, under § 548(a)(1) and § 550(a)(2) seeking to recover from COLCHESTER, as an immediate transferee, a transfer made with the intent to defraud creditors. The only difference between Counts III and V is whether COLCHESTER is proven to be an initial or an immediate transferee. As to both counts, the TRUSTEE must prove a transfer with intent to defraud creditors. However, the TRUSTEE cannot recover under Count V if it is proven that COLCHESTER gave value, in good faith, and without knowledge of the transfer.[4]

Before addressing the issues raised under § 548 and § 550, there is a preliminary issue raised by COLCHESTER pertaining to the pleadings. COLCHESTER argues that as to Counts III and V, the facts upon which the TRUSTEE's motion is based are different than the allegations in those counts in that the complaint is based on allegations that COLCHESTER paid checks against uncollected funds, while the motion is based on allegations that COLCHESTER permitted an overdraft situation to develop by allowing KNOWLES to draw against insufficient funds followed by KNOWLES covering the insufficiency with funds withdrawn from FIRST. The TRUSTEE counters by arguing that after filing the complaint, through discovery, he determined exactly what occurred and that the broad allegations in the complaint encompass the lesser allegations

---

4. For brevity purposes, § 548(a) and § 550(a) have been stated in a general fashion, recognizing there are specific requirements for recovery under each section.

upon which the motion is based. Not much time need be spent on this issue, because assuming the TRUSTEE is correct, the TRUSTEE still can not prevail on his motion.

Turning to the TRUSTEE's motion, COLCHESTER does not contest that, for the purposes of § 548(a)(1), there was an actual intent to hinder, delay, or defraud creditors. Rather, relying heavily on the Seventh Circuit Court of Appeals' decision in *Bonded Financial Services v. European Amer. Bank*, 838 F.2d 890 (7th Cir.1988), COLCHESTER first contends there were no transfers within the meaning of that term as used in § 548. Therefore, the first issue under Counts III and V is whether the two checks written to KNOWLES by KZK on the checking account at FIRST and deposited into KNOWLES checking account at COLCHESTER were transfers within the meaning of that term as used by § 548. Contrary to COLCHESTER's argument, the decision in *Bonded* is not based on there not being a transfer. In fact, at the initial stages of the opinion, the court summarily states there was a transfer for purposes of § 548, and that the decision depended on the application of § 550. So, COLCHESTER's argument based on *Bonded* will be considered in the context of § 550.

Which brings this Court to the next issue of whether COLCHESTER was an initial or an immediate transferee for the purposes of § 550(a). *Bonded* is both instructive and controlling. In that case, one Michael Ryan owned both Bonded Financial Services and Shamrock Hills Farms and had borrowed $655,000 from the bank. *Bonded* then sent the bank a check payable to the bank with a direction to deposit it into Michael Ryan's account at the bank. Ten days later Michael Ryan instructed the bank to debit the account in the amount of $200,000 to reduce the balance of the loan, which was done. Bonded's Chapter 7 Trustee in bankruptcy sued the bank under § 548 and § 550, and on appeal the Seventh Circuit Court of Appeals had before it the issue of whether the bank was an initial or an immediate transferee.

The court first noted that if the transaction had been merely a one step transaction where the direction to the bank, at the time it received the check, was to "use this check to reduce Ryan's loan," the bank would have been an initial transferee. The court went on to hold the bank was an immediate transferee by classifying the transaction as a two step transaction where the first step involved the bank acting as Michael Ryan's agent to collect the check and the second step involving the bank following Michael Ryan's direction to apply $200,000 to the loan balance, stating:

> Although the Bankruptcy code does not define "transferee", and there is no legislative history on the point, we think the minimum requirement of status as a "transferee" is dominion over the money or other asset....
>
> As the Bank saw the transaction on January 21, it was Ryan's agent for the purpose of collecting a check from Bonded's bank. Cf. UCC § 4-201(1) (giving a collecting bank a presumption of agency status unless "a contrary intent clearly appears"). It received nothing from Bonded that it could call its own; the Bank was not Bonded's creditor, and Ryan owed the Bank as much as ever. The Bank had no dominion over the $200,000 until January 31, when Ryan instructed the Bank to debit the account to reduce the loan; in the interim, so far as the Bank was concerned, Ryan was free to invest the whole $200,000 in lottery tickets or uranium stocks. As the Bank saw things on January 31, it was getting Ryan's money. It would be at risk if Ryan were defrauding his other creditors or preferring the Bank, but the Bank would perceive no reason to investigate Bonded or sequester the money for the benefit of Bonded's creditors....

■ The facts of the case before this Court, while not identical, are similar to those in *Bonded*. KNOWLES had KZK write checks payable to him, which he deposited into his account at COLCHESTER, the proceeds of which were used to cover negative balances in the account.[5] In the first

---

5. The Trustee in *Bonded* had stronger facts for a finding that the bank was an "initial" transferee because in that case the check was payable to the bank.

step KNOWLES held the checks. He exercised dominion and control over them. He could have cashed them, endorsed them to a third party, deposited them into another bank, or deposited them into his account at COLCHESTER. Furthermore, as to the $100,000 check, KNOWLES held it for three days, during which period of time he was free to take such action as he deemed appropriate. The second step involved KNOWLES depositing the checks into his account at COLCHESTER. Therefore, COLCHESTER was an immediate transferee and not an initial transferee.

The TRUSTEE argues that the transaction should be collapsed into a one step transaction which would make COLCHESTER an initial transferee. There are several reasons why that argument is not persuasive. First, while it cannot be determined if that argument was made in *Bonded* and it is dangerous to speculate based on what might have occurred, it is a theory that would have been considered in a thoughtful analysis of that case and could have caused the court in *Bonded* to come to a different conclusion, were it so inclined. Second, the TRUSTEE categorizes what occurred with hindsight and overlooks the fact that KNOWLES controlled the checks, as he was the payee of the checks and could have done with them as he pleased. Third, the TRUSTEE has not shown that KNOWLES lacked control when he received the checks. Fourth, the collapsing of the transaction only serves to muddle the scheme of the Bankruptcy Code by injecting issues of value, good faith and knowledge into § 550(a)(1) when the Code provides for those issues to be decided under § 550(a)(2) and § 550(b)(1). Collapsing the transaction makes the TRUSTEE's case easier to prove, as he doesn't have to deal with those § 550(b)(1) issues. But, it runs contrary to the underlying concepts of the Bankruptcy Code.

The next issue to be addressed is whether under § 550(a)(2) the TRUSTEE may recover a fraudulent conveyance under § 548 from COLCHESTER as an immediate transferee. The TRUSTEE cannot recover from COLCHESTER as an immediate or mediate transferee under § 550(a)(2) if under § 550(b)(1) COLCHESTER is:

[A] transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided.

Section 550(b)(1) brings into issue questions of value, good faith and knowledge. In *Bonded*, the court considered the issue of value, but did not consider the issues of actual knowledge or good faith as those issues were not raised in that case. Because the trustee in *Bonded* did not contend that the bank knew of Bonded's insolvency, the court focused upon the bank's failure to investigate the source of the deposit. In the case before this Court, not only does the check kite raise factual issues as to the elements of knowledge and good faith under § 550(b)(1), COLCHESTER has specifically raised factual issues of value and knowledge. These factual issues cannot be resolved by summary judgment.

By its motion for summary judgment COLCHESTER contends there are three reasons why judgment should be entered in its favor. First, there were no transfers within the meaning of that term as used in § 548. That contention was previously addressed and rejected when discussing the TRUSTEE'S motion. Second, KNOWLES received "reasonably equivalent value" under § 548. As part of this contention, COLCHESTER argues that by reason of the security interest it held pursuant to § 4–210(a) of the Uniform Commercial Code as adopted in Illinois, 810 ILCS 5/4–210(a), as a matter of law it gave value to KNOWLES by honoring checks he wrote against uncollected funds.[6] In considering this argument, value

---

6. Section 4–210(a) provides as follows:

§ 4–210. Security interest of collecting bank in items, accompanying documents and proceeds.

(a) A collecting bank has a security interest in an item and any accompanying documents or the proceeds of either;
(1) in case of an item deposited in an account, to the extent to which credit given for the item has been withdrawn or applied;

under § 548(a)(2) should not be confused with value under § 550(b)(1). Value under § 548(a)(2) means value to KZK. Under *Bonded*, value, in the context of § 550(b)(1), refers to value given by COLCHESTER. The fact that KNOWLES may have received value is legally significant under § 550(b)(1), but it has no legal significance under § 548(a)(2), which is concerned with value to KZK. Furthermore, COLCHESTER has submitted no affidavits, depositions or other proof showing that KZK received value. Therefore, its contention under § 548(a)(2) fails. Third, COLCHESTER had no knowledge of the check kiting operation. What COLCHESTER knew or didn't know is important in the context of § 550(b)(1) and is a question of fact that is disputed. This issue can only be resolved by a trial. For the reasons discussed above, COLCHESTER is not entitled to summary judgment.

COLCHESTER's motion for summary judgment also seeks dismissal of the two counts brought under the Uniform Fraudulent Transfer Act as adopted in Illinois. Count VII is brought under § 5(a), 740 ILCS § 160/5(a), with the TRUSTEE alleging that COLCHESTER was a "subsequent transferee". Count VIII is under § 5(b) with the TRUSTEE again alleging that COLCHESTER was a "subsequent transferee". As this Court has held that similar counts, under § 548 and § 550 involving an immediate transferee, should stand, Counts VII and VIII involving the same concept, but using a different term, i.e., "subsequent" rather than "immediate", should also stand.

There is one last matter that this Court needs to address. The attorney for COLCHESTER requested a continuance of the hearing on the motions for summary judgment that were scheduled for September 5, 1997. The attorney for COLCHESTER did not appear at the hearing and for the reasons stated in open court that request was denied and the hearing proceeded. That prompted additional motions and pleadings to be filed by both COLCHESTER and the TRUSTEE. They are as follows:

On September 10, 1997, COLCHESTER filed an Objection To Denial Of Motion To Continue Hearing Date On Cross Motion For Summary Judgment; Motion For Leave To File Written Argument Responding To Tape Recording Of Argument Made By TRUSTEE's Counsel And Request For Transcript of Oral Argument.

On September 15, 1997, the TRUSTEE filed the Trustee's Response To Bank's Request For Transcript Of Oral Argument And To Bank's Objection To Denial Of Motion To Continue Hearing And Motion For Leave To File Written Argument.

---

(2) in case of an item for which it has given credit available for withdrawal as of right, to the extent of the credit given, whether or not the credit is drawn upon or there is a right of charge-back; or

(3) if it makes an advance on or against the item.

In the process of making this argument, COLCHESTER makes statements such as:

[T]he payment by the bank of checks drawn on a customer's demand deposit account, whether or not the funds reflected on the bank's ledger sheet are collected or not, does not collect an antecedent debt, within 11 U.S.C. § 547–550, so as to create a right in a bankruptcy trustee to avoid any preference or avoid as a fraudulent transfer any payment by a bank of funds drawn by the bank customer on uncollected funds on his account by reason of the bank's prior security interest under 810 ILCS 5/4–210(a).

and

.... CSB's Payment of Checks Drawn by KNOWLES on Uncollected Funds in His CSB Account Did Not Constitute a Loan to KNOWLES the Repayment of Which Was a Fraudulent Conveyance Under the Uniform Commercial Code....

and

In Illinois, 810 ILCS 5/4–210(a)(1) gives a bank the same security interest the [bank] enjoyed in *Laws, supra.* Therefore, even if the TRUSTEE in this case could prove that CSB knowingly made payment of checks it knew were drawn on uncollected funds as part of a loan agreement between CSB and KNOWLES followed by KNOWLES covering uncollected funds with good money, the TRUSTEE in this case still could not show, as a matter of law, that CSB improved its position for 11 U.S.C. § 547 purposes or gave KNOWLES less than reasonably equivalent value for 11 U.S.C. § 548 purposes.

These statements have no relevancy as the TRUSTEE is pursuing an alleged fraudulent conveyance under the Bankruptcy Code and the Uniform Fraudulent Transfer Act as adopted in Illinois, and not the Uniform Commercial Code, and not as a preference.

On September 16, 1997, COLCHESTER filed Defendant Colchester State Bank's Proffered Written Submission In Lieu Of Oral Argument And Notice Of Submission Of "Defendant Colchester State Bank's Proffered Written Submission In Lieu Of Oral Argument"; Statement Of Agreement That The Trustee May Respond As He Sees Fit; And, To The Extent The Court Desires, Request For Further Oral Argument To Address Questions The Court Might Have.

On September 17, 1997, COLCHESTER filed a Supplemental Objection And Response To Denial Of Motion For Continuance Of Hearing On Cross Motions For Summary Judgment.

On September 26, 1997, the TRUSTEE filed the Trustee's Reply To Colchester State Bank's Proffered Written Submission In Lieu Of Oral Argument.

On October 14, 1997, COLCHESTER filed a Motion For Leave To File Sur Reply To TRUSTEE's "Reply To 'CSB's Proffered Written Submission In Lieu Of Oral Argument'".

On February 19, 1998, COLCHESTER filed a Notice of Supplemental Authority.

On March 18, 1998, the TRUSTEE filed Trustee's Response to Notice of Supplemental Authority Submitted by Defendant Colchester State Bank.

Because this Court is deciding the motions for summary judgment as originally submitted and because the TRUSTEE's motion is being denied, there is no reason to consider the additional motions and pleadings filed due to the failure of COLCHESTER's attorney to attend the September 5, 1997, hearing.

In conclusion for the reasons stated above:

1. Counts I an II should be dismissed pursuant to the TRUSTEE's motion to do so.

2. Judgment should be entered for COLCHESTER on Counts III an IV, as COLCHESTER is not an initial transferee.

3. Counts V and VI should remain and both the TRUSTEE's motion and the motion of COLCHESTER should be denied as to those counts, as COLCHESTER is an imme-diate transferee and there are questions of fact.

4. Counts VII and VIII should remain and the motion of COLCHESTER should be denied as to those counts as COLCHESTER is a subsequent transferee and there are questions of fact.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.